Learned, P. J.
The people gave in evidence against the defendant a paper signed and sworn to by him, in which he stated that he and Benjamin Miller, Armitage Van Anken, David Argesinger, and Silas Downing, at a certain time and place, made an assault on Frederick Plank, and took from him certain money, by entering into his house and binding him, and so taking the property. This statement had reference to the offense for which defendant was on trial. Being his admission, it was evidence against him of all contained in it, unless it had been improperly obtained. It was, then, evidence against him, not only that he committed the assault and robbery, but that he did it in company with the persons named. The charge of the learned judge states the .evidence as being that some persons—not one person—committed the act. And proof that several were engaged in the alleged crime was relevant, because it would be hardly possible that one person could commit it alone. Every admission, with°some few exceptions, is relevant against the person by whom it is made; and a confession is but an admission of a crime. Steph. Dig. Ev. 15, 21. When, therefore, this admission was given in evidence, the jury might have believed therefrom that this defendant and *360 the four others named committed the alleged crime. Afterwards the defendant called Van Anken, Downing, and Argesinger, and offered to prove by them that they were not at Plank’s house at the time and place specified, with the defendant. The defendant offered by other witnesses proof tending to show that Miller and Argesinger were not at the place where the crime was committed at the time specified. All of this evidence was objected to by the people on thé ground that the confession was evidence against this defendant only, not against Argesinger and the others; and that it might be false in every other particular, and yet it might be true that defendant participated in the robbery. The evidence was excluded, and defendant excepted.
Now, it is quite correct to say that the confession may be false in every other particular, and yet it may be true that defendant participated in the robbery. But the question here is whether the defendant may not give evidence tending to disprove an alleged fact, of which the people have given proof against him. Certainly, when one side gives evidence tending tó prove a fact, the other side may give evidence to the contrary. The people had given evidence tending to show that these five persons, together, had committed the alleged crime. Could not the defendant show that four of them were not there, and did not commit it, especially since the crime could not have been committed by one alone? If the defendant had made a confession that he alone went to Plank’s, and tied him and his boy, and robbed the house, such a confession, under the other testimony, would have received no credit. - But he makes a confession of a transaction not improbable on its face. And evidence is offered tending to show that statements in that confession are not true; and these are such statements, furthermore, that, if tiiey are not true, then the truth of the confession becomes doubtful. Of course it is not impossible that the defendant might have committed the crime in company with four persons other than those named, but it certainly is his right to show that he did not commit it with those named; especially when he has been indicted jointly with Argesinger, Miller, and another, who, being unknown, is named “John Doe.”
When we notice the manner in which this confession was obtained, we shall see the importance of the excluded evidence in this case. A justice of the peace, about 2 o’clock in the morning, wrote this confession in his office, aided by the district attorney. He took it at that hour to the lock-up, where the defendant was asleep. They spoke sharply to him, and woke him up. The justice read the paper to him. He signed his mark, and swore to it, and then went back to his cell. The defendant said at the time that he had been drinking, and he appeared so. He had been arrested in a saloon, and taken directly to the lock-up. He was intoxicated when he was arrested. The next morning, while nervous and excited, he had a trial, and was sent to the penitentiary, apparently for being drunk a"hd disorderly. Now, when a man is suddenly wakened from a drunken sleep in a lock-up by a magistrate, to listen to a paper which has been already drawn in formal, legal style, and is then asked to sign and swear to it, it would be quite possible that the paper should not contain the exact truth. And it appears that afterwards, when the others had been arrested, and were being examined before the magistrate, the defendant stated on oath that neither he nor they had anything to do with the alleged crime. It therefore was of importance to him to disprove the statements in regard to Miller and the others, so that the jury might be led to believe that he did not know what he was signing when he put his mark to that paper.
The testimony of Plank is very unsatisfactory. He is quite confused as to the details of the affair. Something of this may be due to excitement; but ■there are some points of his testimony which cannot be passed over as due to such excitement. He testifies that before the alleged crime he had seen the defendant twice, and he identifies him as one of the persons engaged in the robbery. On the day after the robbery he went with a constable about the vil *361 lage to find the persons, if possible; but he did not tell the constable that he had recognized the defendant; and the day after the robbery he said he could identify none. He says that the defendant was standing at the door of the room, holding a revolver at him, and that he was looking at the man all the time, and he knew at that time that this was Earl Fox. Then he testifies that the men stood and let him look at them, and afterwards they put on masks; that Earl Fox put a mask on. Then he says that while Fox was putting on his mask another man was holding a revolver at him, (Plank;) Plank being all this time tied fast, both hands and feet. About 10 minutes after the robbery Plank testifies that he went to his neighbor, and told him of the robbery, and said he had no idea who any of the men were. He further testifies that on the examination had of Miller, Van Anken, Downing, and Argesinger, charged with this crime, he did not swear to anything about recognizing Earl Fox; so that it will be seen that the testimony of Plank as to the identification is of very little value. This makes it more important to see that the defendant had every right as to the alleged confession.
The learned counsel for the people urges that to admit this evidence would lead to the trial, in the present action, of the four other persons. But let us suppose that some witness had testified for the people that he saw defendant Miller, Van Anken, Downing, and Argesinger, at the time and place specified, commit the crime of breaking into Plank’s house, tying and robbing him, would it not have been competent for defendant to prove that all of those four men were elsewhere at that time? Such proof might not be conclusive of defendant’s innocence, but it would seem to be competent. Indeed, the counsel for the people admit that if the confession had contained full particulars of the defendant’s acts in committing the crime, the defendant might have contradicted by proper evidence such particulars. This seems to us to concede that defendant might have given evidence to contradict the alleged presence of Van Anken and others at the time and place of the alleged crime.
Another question is presented. When the confession was offered in evidence, the defendant claimed the right, before it was received, to show by the witness then on the stand and by other witnesses that the confession was ob- ■ tained through fear and by promise of immunity. The court said: “ The paper [that is, the confession] is received now, but you can make the proof you offer later, and, if you make it, the paper will be stricken out. ” The defendant excepted. We suppose that if a defendant, against Whom a confession is offered in evidence, offers, before it is received, to prove by witnesses such facts as willshow the confession to be incompetent, it is his right to do so. If a confession is once given in evidence to the jury, its effect cannot be removed by, as it is said, striking it out. A judge may strike it out of the record, but he" cannot strike it out of the minds of the jury. Therefore it is just that the defendant should have an opportunity to show that it was obtained under such circumstances as to be incompetent, and to call on the judge so to decide. Com. v. Culver, 126 Mass. 464. Probably no actual wrong was done to the defendant in this particular, but as we think there was error in the other matter previously discussed, we refer briefly to this offer of evidence by the defendant. For the reasons above given we think there should be a new trial.
Judgment and conviction reversed, and a new trial granted. All concur.